UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSANNA VILLALOBOS,<br><br>               Plaintiff,<br>    v.<br><br>COSTCO WHOLESALE<br>CORPORATION, et al.,<br><br>               Defendants. | No. 2:23-cv-00622-DJC-JDP<br><br><br><u>ORDER</u> |

Pending before the Court is Plaintiff's Motion to Remand (ECF No. 13) and Defendants' Motion to Dismiss all claims (ECF No. 14-1).  The Court held a hearing on both motions on July 6, 2023 (ECF No. 21) and took the matters under submission.

Having considered the Parties' briefings and arguments, the Court hereby DENIES Plaintiff's Motion to Remand, and GRANTS Defendants' Motion to Dismiss all claims against Defendants Ramona Lozada, Amanda Fears, Sandy Dennington, and Osvaldo Ibarra with prejudice.  Further, the Court DENIES Defendants' Motion to Dismiss Causes of Action One, Fourteen, and Fifteen against Defendant Costco Wholesale Corporation, but GRANTS Defendants' Motion to Dismiss all other claims against Defendant Costco with leave to amend.

////

////

# BACKGROUND

Plaintiff Susanna Villalobos, a Costco employee, filed a complaint in the California Superior Court on January 25, 2023, alleging Defendant Costco and four of her supervisors, Defendants Lozada, Fears, Dennington, and Ibarra, generally harassed, discriminated against, and retaliated against her based on four protected categories—sex/gender, religion, marital status, and actual/perceived disability.[1]  (*See generally* Compl. (ECF No. 1-1).)

Regarding her sex/gender harassment, discrimination, and retaliation, Plaintiff alleges the following:

- She was continually asked out on dates by a fellow co-worker, Alex Guzman, from May 2021 through March 2022.  (Compl. ¶¶ 10(a), 10(j).)

- When she confronted Guzman about his behavior, he became "agitated," cursed her out, and acted as if he was going to push a pallet of materials onto her to injure her.  (Compl. ¶¶ 10(d)–(f).)

- She complained to a supervisor "Eddie" in June 2021 regarding the harassment from Guzman, but he failed to take any action beyond telling her to "just stay away from him."  (Compl. ¶ 10(h).)

////

---

[1] Specifically, Plaintiff alleges (1) "Sex/Gender Harassment in Employment" under California's Fair Employment and Housing Act ("FEHA") against all Defendants; (2) "Sex/Gender Discrimination in Employment" under the FEHA against Costco; (3) "Sex/Gender Retaliation in Employment" under the FEHA against Costco; (4) "Religious Harassment in Employment" under the FEHA against Costco, Lozada, and Fears; (5) "Religious Discrimination in Employment" under the FEHA against Costco; (6) "Religious Retaliation in Employment" under the FEHA against Costco; (7) "Marital Status Harassment in Employment" under the FEHA against Costco and Dennington; (8) "Marital Status Discrimination in Employment" under the FEHA against Costco; (9) "Marital Status Retaliation in Employment" under the FEHA against Costco; (10) "Actual/Perceived Disability Harassment in Employment" under the FEHA against Costco, Fears, and Dennington; (11) "Actual/Perceived Disability Discrimination in Employment" under the FEHA against Costco; (12) "Actual/Perceived Disability Retaliation in Employment" under the FEHA against Costco; (13) "Violation of the California Family Rights Act" against Costco; (14) "Failure to Engage in the Mandatory Good-Faith Interactive Process" under the FEHA against Costco; (15) "Failure to Accommodate" Plaintiff's disability under the FEHA against Costco; (16) "Unsafe Workplace Violations" against Costco; (17) "Whistleblower Violations" against Costco; (18) "Assault" against Costco; (19) "Battery" against Costco; (20) "Intentional Infliction of Emotional Distress" against all Defendants; and (21) "Retaliation in Violation of Public Policy" against Costco.  (*See* Compl.)

- She regularly complained to Costco's management about the incidents of alleged sexual harassment by Guzman but was "constantly laughed off." (Compl. ¶ 10(k).)

- She composed a written complaint to Fears in March 2022 about Guzman's harassment, and Fears refused to give her a copy. (Compl. ¶¶ 10(l)–(m).)

- In April 2022, Lozada and Fears advised her that an investigation into her complaint had been conducted finding no evidence of wrongdoing. Lozada and Fears admitted they did not interview any witnesses. (Compl. ¶¶ 10(n)–(o).)

- In July 2022, she was told by another employee, Art Garcia, "You look good today;" he proceeded to follow her into the women's restroom, and grab her arm, before running into the men's restroom. (Compl. ¶¶ 10(p)–(q).)

- She complained to a supervisor about Garcia's behavior. (Compl. ¶ 10(r).)

- After complaining to her supervisor about Garcia's behavior, Lozada tried to downplay Garcia's behavior, and Dennington attempted to coerce her into signing a Non-Disclosure Agreement ("NDA"), called her a "liar," and "overly monitor[ed] and scrutinize[ed]" her work. (Compl. ¶¶ 10(r)–(u).)

- She again complained to Costco's management and was written up a week later after opening a door with a forklift. In addition, she was drug tested and sent to work in the guard station until her drug test came back. (Compl. ¶¶ 10(v)–(y).)

- While working at the guard station, she was written up for not wearing safety shoes and having her phone out on the warehouse floor, despite other employees not being written up for similar infractions. (Compl. ¶¶ 10(z)–(cc).)

- She was told by Ibarra that Costco was trying to get her "out of here." (Compl. ¶ 10(dd).)

Regarding her religious harassment, discrimination, and retaliation, Plaintiff alleges that:

- In April 2022, Lozada and Fears switched her schedule so that she was unable to attend church on Thursdays and Fridays according to her religious beliefs. (Compl. ¶ 66(a).)
- Lozada and Fears stated they were trying to keep her and Guzman apart, while she was informed by other managers that her schedule change was due to her lower seniority. (Compl. ¶¶ 66(c)–(d), 66(i).)
- Lozada and Fears stated Costco's policy is to only provide religious accommodations related to eating meat and "smirked" at her while providing this information. (Compl. ¶¶ 66(f)–(g).)

Regarding her marital status harassment, discrimination, and retaliation, Plaintiff alleges that:

- She was reprimanded by Dennington for requesting three paid days off for bereavement leave after her fiancé/domestic partner's grandmother passed away in October 2022 and was told she did not qualify for paid leave because she was not married. (Compl. ¶¶ 125(a)–(c).)
- Costco's handbook states that an employee qualifies for paid bereavement leave if they are in a domestic partnership. (Compl. ¶ 125(d).)
- When she complained to Dennington regarding the requested leave, Dennington questioned her marital status, "screamed" several comments at her, and forced her to submit "voluminous" documentation to prove her marital status. (Compl. ¶¶ 125(e)–(g).)

Regarding her actual or perceived disability harassment, discrimination, and retaliation, Plaintiff alleges that:

- She suffers from a blood disorder and had been granted intermittent leave by Costco in the past. (Compl. ¶¶ 187(a)–(b).)
- She was sent to work in the refrigerator by Fears even knowing it might exacerbate her condition. (Compl. ¶¶ 187(c)–(d).)

////

4

- When she complained, Fears and Dennington required her to provide a doctor's note and fill out documentation.  (Compl. ¶¶ 187(e)–(f).)

- She was told by Fears she would not be accommodated by not working outside the refrigerator apart from the intermittent leave she had already received. (Compl. ¶ 187(g).)

Defendants timely removed the matter to this Court on April 3, 2023 based on diversity jurisdiction, alleging that non-diverse Defendants Lozada, Fears, Dennington, and Ibarra are "sham" defendants whose citizenship may be disregarded for the purposes of jurisdiction,[2] and the amount in controversy exceeds $75,000.  (*See* Not. Removal (ECF No. 1) ¶¶ 9–56.)  Plaintiff now moves to remand the matter back to state court, arguing she pled viable claims against the individual Defendants and that Defendants provided insufficient evidence to establish the amount in controversy. Defendants, for their part, move to dismiss Plaintiff's Complaint with prejudice.

The Court will address each motion in turn below.

## MOTION TO REMAND

### I.    Legal Standard

A defendant may remove "any civil action brought in a State court of which the district courts . . . have original jurisdiction."  28 U.S.C. § 1441(a).  Diversity removal requires complete diversity, meaning that each plaintiff must be of a different citizenship from each defendant.  *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996).  "In determining whether there is complete diversity, district courts may disregard the citizenship of a non-diverse defendant who has been fraudulently joined."  *GranCare, LLC v. Thrower ex rel. Mills*, 889 F.3d 543, 548 (9th Cir. 2018).

Fraudulent joinder[3] may be established by showing that an "individual [ ] joined in the action cannot be liable on any theory."  *Ritchey v. Upjohn Drug Co.*, 139 F.3d

---

[2] It is undisputed that Plaintiff, as well as Lozada, Fears, Dennington, and Ibarra, are citizens of California, while Costco is a citizen of Washington.  (Not. Removal ¶¶ 9–15; Compl. ¶¶ 1–6.)

[3] While the phrases "fraudulent joinder" and "sham defendant" may seem to imply unethical behavior, that is not the case.  Fraudulent joinder and sham defendant are terms of art, and there is no

1313, 1318 (9th Cir. 1998); *see also Hunter v. Philip Morris USA*, 582 F.3d 1039, 1044 (9th Cir. 2009). "There is a presumption against finding fraudulent joinder, and defendants who assert that plaintiff has fraudulently joined a party carry a heavy burden of persuasion." *Plute v. Roadway Package Sys., Inc.*, 141 F. Supp. 2d 1005, 1008 (N.D. Cal. 2001). Thus, a claim of fraudulent joinder should be denied if there is any possibility that the plaintiff may prevail on a cause of action against the in-state defendants. *See id.* at 1008, 1012. "In determining whether a defendant was joined fraudulently, the courts must resolve 'all disputed questions of fact and all ambiguities in the controlling state law in favor of the non-removing party.'" *Id.* at 1008 (quoting *Dodson v. Spiliada*, 951 F.2d 40, 42–43 (5th Cir. 1992)). Doubts concerning the sufficiency of a claim because of inartful, ambiguous, or defective pleading must be resolved in favor of remand. *Archuleta v. Am. Airlines, Inc.*, No. CV-00-1286-MMM-SHx, 2000 WL 656808, at *4 (C.D. Cal. May 12, 2000).

## II.   Discussion

For the reasons set forth below, the Court finds that Plaintiff's Complaint fails to state any viable claims against the non-diverse Defendants. Plaintiff had ample opportunity in her Motion to Remand and at the July 6 hearing to supplement her claims, but failed to do so. Thus, while the Court need only find a mere "glimmer of hope that plaintiff can establish [a] claim" to find in favor of remand, *Gonzalez v. J.S. Paluch Co.*, No. CV-12-8696-DDP-FMOx, 2013 WL 100210, at *4 (C.D. Cal. Jan. 7, 2013) (citation and marks omitted), no such glimmer exists here. The Court also finds that the amount in controversy more likely than not exceeds $75,000. Thus, Plaintiff's Motion to Remand is denied.

////

////

////

---

suggestion here that Plaintiff acted in an unethical or illegal manner in seeking to bring causes of action against these defendants.

**A.      There are No Actionable Claims Pled Against the Individual Defendants**

Plaintiff asserts she has adequately pled claims for (1) sex/gender harassment in violation of the California Fair Employment and Housing Act ("FEHA") against Lozada, Fears, Dennington, and Ibarra; (2) religious harassment in violation of the FEHA against Lozada and Fears; (3) marital status harassment in violation of the FEHA against Dennington; (4) disability harassment in violation of the FEHA against Fears and Dennington; and (5) intentional infliction of emotional distress ("IIED") claims against Lozada, Fears, Dennington, and Ibarra, such that none of these individual Defendants are "sham" defendants.  (Mot. Remand at 5–18.)

**1.      Harassment Claims**

California's FEHA recognizes two theories of liability for sexual harassment claims: "quid pro quo harassment, where a term of employment is conditioned upon submission to unwelcome sexual advances . . . [and] hostile work environment, where the harassment is sufficiently pervasive so as to alter the conditions of employment and create an abusive work environment."  *Herberg v. Cal. Inst. of Arts*, 101 Cal. App. 4th 142, 149 (2002) (quoting *Mogilefsky v. Superior Ct.*, 20 Cal. App. 4th 1409, 1414, (1993)).  To establish a prima facie case of hostile work environment harassment, a plaintiff must show that "(1) she is a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her protected status; (4) the harassment unreasonably interfered with her work performance by creating an intimidating, hostile, or offensive work environment; and (5) defendants are liable for the harassment."  *Galvan v. Dameron Hosp. Ass'n*, 37 Cal. App. 5th 549, 563 (2019).  To be actionable, the harassment "must be sufficiently severe or pervasive 'to alter the conditions of the victim's employment and create an abusive working environment.'"  *Vazquez v. Costco Wholesale Corp.*, No. CV-21-2563-PSG-JCs, 2021 WL 1784342, at *3 (C.D. Cal. May 5, 2021) (quoting *Aguilar v. Avis Rent A Car Sys., Inc.*, 21 Cal. 4th 121, 130 (1999)).  There is no recovery for harassment that is

occasional, isolated, sporadic, or trivial; "rather the plaintiff must show a concerted pattern of harassment of a repeated, routine or a generalized nature." *Mokler v. Cnty. of Orange*, 157 Cal. App. 4th 121, 142 (2007).

Plaintiff's claims clearly fail to meet this standard.  First, none of the sex/gender harassment alleged by Plaintiff is sufficiently severe or pervasive.  Plaintiff alleges Lozada and Fears failed to adequately investigate her harassment complaints. (Compl. ¶¶ 10(n)–(o).)  However, this does not amount to harassment because it is a personnel management action.  *See Fiol v. Doellstedt*, 50 Cal. App. 4th 1318, 1331 (1996) (explaining that a supervisor's failure to address employee complaints is a personnel decision, not harassment); *see also Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55, 63–65 (1996) ("[H]arassment consists of a type of conduct not necessary for performance of a supervisory job . . . [thus] commonly necessary personnel management actions such as hiring and firing, job or project assignments, office or work station assignments, promotion or demotion, performance evaluations, the provision of support, the assignment or nonassignment of supervisory functions, deciding who will and who will not attend meetings, deciding who will be laid off, and the like, do not come within the meaning of harassment.").  Plaintiff also alleges Lozada downplayed Garcia's comments and behavior, and Dennington accused Plaintiff of lying and tried to coerce her into signing an NDA.  (Compl. ¶¶ 10(s)–(u).) However, these are isolated incidents which fail to demonstrate a concerted pattern. "[T]he sporadic use of abusive language, gender-related jokes, and occasional teasing" are not actionable harassment.  *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).  Ibarra's warning plainly fails for the same reason.  A "few isolated incidents" can support a FEHA harassment claim, but only if they are "severe in the extreme." *Hughes v. Pair*, 46 Cal. 4th 1035, 1043 (2009) (a single harassing incident involving physical violence, or the threat thereof may qualify as severe in the extreme). Plaintiff has not made this showing.  Thus, Plaintiff has failed to demonstrate the sex/gender harassment alleged is severe or pervasive.

Second, there is no indication that Lozada and Fears changed Plaintiff's schedule because of her protected religious status. Rather, the Complaint states the change of schedule was in response to Plaintiff's complaints about Guzman and may have been implemented due to Plaintiff's lower seniority.[4] (Compl. ¶¶ 66(c)–(d), 66(i).) The mere fact the schedule change affected Plaintiff's religious practice does not mean that the decision was motivated by religious animus.

Third, the marital status harassment Plaintiff alleges consists of a single instance of Dennington questioning Plaintiff's marital status with the implication she was lying, and allegedly screaming at her. (Compl. ¶¶ 125(e)–(g).) As with the sex/gender harassment, this isolated incident fails to demonstrate a concerted pattern of harassment, *see McCree v. State Dep't of Conservation*, No. 12–cv–04127–JST, 2014 WL 1936504, at *5 (N.D. Cal. May 14, 2014) (holding isolated comments and a vague allegation plaintiff was called a liar did not rise to the level of a "concerted pattern of harassment"), and Plaintiff makes no showing this incident was "severe in the extreme," *Hughes*, 46 Cal. 4th at 1043. Dennington's reprimand for requesting leave and request for "voluminous" documentation similarly fail as they fall within the scope of personnel management. *See Janken*, 46 Cal. App. 4th at 64–65.

Finally, Plaintiff's claims of actual or perceived disability harassment by Fears and Dennington – being assigned to work in the refrigerator and being required to fill out documentation regarding her disability – appear to consist of personnel management actions that courts have found do not come within the meaning of harassment. *See id.*; *see also Lawler v. Montblanc N. Am., LLC*, 704 F.3d 1235, 1244 (9th Cir. 2013). Moreover, while Plaintiff may be able to allege sufficient facts to show that Costco did not adequately accommodate her disability, the Complaint fails to establish that Fears and Dennington assigned her to work in the refrigerator *because*

---

[4] This claim would be better styled as a failure to accommodate claim, which cannot be brought against individual supervisors. *See Kennedy v. Kings Mosquito Abatement Dist.*, No. 1:12-cv-1458-AWI-MJS, 2013 WL 3968150, at *4 (E.D. Cal. July 31, 2013) (explaining liability for failure to accommodate claims under the FEHA is limited to employers).

1    *of* her disability status.  (*See* Compl. ¶¶ 187(c)–(d) ("[D]espite Defendant Costco and

2    its management's knowledge of Plaintiff's disability, Defendant Fears deliberately sent

3    Plaintiff to perform work in the refrigerator . . . .").)  Thus, Plaintiff has failed to

4    demonstrate any animus.

5                    **2.      Intentional Infliction of Emotional Distress Claim**

6            To prevail on an intentional infliction of emotional distress claim, a plaintiff must

7    allege that the defendants engaged in "conduct . . . so outrageous in character, and so

8    extreme in degree, as to go beyond all possible bounds of decency, and to be

9    regarded as atrocious, and utterly intolerable in a civilized community."  *Cantu v.*

10   *Resolution Trust Corp.*, 4 Cal. App. 4th 857, 888 (1992).  However, a defendant is not

11   liable for conduct that is insulting, annoying, distressing, irritating, or even

12   threatening, *Yurick v. Super. Ct.*, 209 Cal. App. 3d 1116, 1129–30 (1989), and "[a]

13   simple pleading of personnel management activity is insufficient to support a claim of

14   intentional infliction of emotional distress, even if improper motivation is alleged,"

15   *Janken*, 46 Cal. App. 4th at 80.  Rather, the conduct at issue must be "egregiously

16   outside the realm of civilized conduct."  *Yurick*, 209 Cal. App. 3d at 1129.

17           Here, Plaintiff's complaints regarding her schedule change, her reassignment to

18   the refrigerator, and the insufficient investigation of her harassment complaint target

19   personnel management activity, which cannot support an IIED claim.  *Janken*, 46 Cal.

20   App. 4th at 80.  Further, Plaintiff's complaints that Lozada downplayed Garcia's

21   comments and behavior, and that Dennington accused her of lying about her sexual

22   harassment, tried to coerce her into signing an NDA, and screamed at her concerning

23   her marital status, while certainly insulting and distressing, do not amount to

24   outrageous conduct.  *See Yurick*, 209 Cal. App. 3d at 1129–30.

25           Even if the individual Defendants' actions could be considered outrageous,

26   Defendants are correct that Plaintiff's IIED claim is preempted by the California

27   Workers' Compensation Act ("WCA"), which is typically "the sole and exclusive remedy

28   for the employee" for all injuries "arising out of and in the course of employment."

1   Cal. Lab. Code §§ 3600(a), 3602(a); *see also Livitsanos v. Super. Ct.*, 2 Cal. 4th 744,

2   752 (1992) ("[T]he proposition that intentional or egregious conduct is necessarily

3   outside the scope of the workers' compensation scheme is erroneous . . . [e]ven

4   intentional 'misconduct' may constitute a 'normal part of the employment

5   relationship.'"); *Jones v. R.J. Donovan Correctional Facility*, 152 Cal. App. 4th 1367,

6   1382 (2007) (holding that a claim of infliction of emotional distress based on alleged

7   discrimination and harassment was void even if the conduct complained about could

8   be characterized as "intentional, unfair or outrageous" because it was covered by the

9   workers' compensation exclusivity provisions).  Although "claims for intentional

10  infliction of emotional distress in the employment context may be asserted where the

11  actionable conduct also forms the basis for a FEHA violation," *Light v. Cal. Dep't of

12  Parks and Rec.*, 14 Cal. App. 5th 75, 97 (2017), as held above the individual

13  Defendants' actions here do not rise to the level of harassment under the FEHA.  Thus,

14  their actions fall within the scope of preemption by the WCA.

15                                          ***

16          As Plaintiff has failed to allege any viable harassment and IIED claims against

17  the individual Defendants, their citizenship may be ignored for the purposes of

18  determining diversity jurisdiction.  *See GranCare, LLC*, 889 F.3d at 548.

19          **B.     Amount in Controversy**

20          Plaintiff claims that Defendants failed to meet their burden to establish by a

21  preponderance of the evidence that the amount in controversy exceeds $75,000 as

22  they did not provide "summary-judgment type evidence" to support their estimated

23  damages and attorney's fees.  (Mot. Remand at 18–19;) *see Matheson v. Progressive

24  Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003) ("Where it is not facially evident

25  from the complaint that more than $75,000 is in controversy, the removing party must

26  prove, by a preponderance of the evidence, that the amount in controversy meets the

27  jurisdictional threshold."); *Sanchez v. Monumental Life Ins. Co.*,102 F.3d 398, 404 (9th

28  Cir. 1996).

1    However, Defendants cited caselaw and comparable California jury verdict

2    information in their Notice of Removal demonstrating the amount in controversy is

3    over $75,000.  (Not. Removal ¶¶ 44–56.)  When no specific damages are alleged,

4    courts may look to cases and jury awards with sufficiently similar claims.  *Ochoa v.*

5    *Costco Wholesale Corp.*, No. 2:22-CV-02287-KJM-AC, 2023 WL 2861906, at *3 (E.D.

6    Cal. Apr. 10, 2023).  Cases are probative if they are "factually identical or, at a

7    minimum, analogous to the case at issue."  *Id.* at *3.  The cases Defendants cite are

8    factually analogous, and Plaintiff fails to dispute or rebut the specific amounts and

9    authorities presented by Defendants.

10    Thus, Defendants have met their burden to show the amount in controversy is

11    more likely than not $75,000.

12                                    **MOTION TO DISMISS**

13    **III.   Legal Standard**

14    A party may move to dismiss for "failure to state a claim upon which relief can

15    be granted."  Fed. R. Civ. P. 12(b)(6).  The motion may be granted only if the complaint

16    lacks a "cognizable legal theory or sufficient facts to support a cognizable legal

17    theory."  *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir.

18    2008).  While the court assumes all factual allegations are true and construes "them in

19    the light most favorable to the nonmoving party," *Steinle v. City & Cty. of S.F.*, 919

20    F.3d 1154, 1160 (9th Cir. 2019), if the complaint's allegations do not "plausibly give

21    rise to an entitlement to relief" the motion must be granted, *Ashcroft v. Iqbal*, 556 U.S.

22    662, 679 (2009).

23    A complaint need contain only a "short and plain statement of the claim

24    showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), not "detailed

25    factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  However,

26    this rule demands more than unadorned accusations; "sufficient factual matter" must

27    make the claim at least plausible.  *Iqbal*, 556 U.S. at 678.  In the same vein, conclusory

28    or formulaic recitations of elements do not alone suffice.  *Id.*  "A claim has facial

1   plausibility when the plaintiff pleads factual content that allows the court to draw the

2   reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This

3   evaluation of plausibility is a context-specific task drawing on "judicial experience and

4   common sense." *Id.* at 679.

5         Dismissal with leave to amend should be freely given "when justice so

6   requires." Fed. R. Civ. P. 15(a)(2); *see also Lopez v. Smith*, 203 F.3d 1122, 1127 (9th

7   Cir. 2000) (dismissal with leave to amend may be granted even if no request to amend

8   is made).  However, dismissal without leave to amend is appropriate when the court is

9   satisfied that the deficiencies in the complaint cannot possibly be cured by

10   amendment.  *See Chang v. Chen*, 80 F.3d 1293, 1296 (9th Cir. 1996).

11   **IV.   Discussion**

12         For the reasons stated above, Plaintiff has failed to allege any plausible claims

13   against the individual Defendants.  Plaintiff was afforded the opportunity to address

14   the deficiencies with these claims in her remand pleadings, but failed to do so.  Thus,

15   these claims are dismissed with prejudice.

16         As to Plaintiff's claims against Costco, the Court finds Plaintiff has plausibly pled

17   harassment based on sex/gender, failure to engage in the interactive process, and

18   failure to accommodate; thus, these claims may proceed.  The remainder of Plaintiff's

19   claims will be dismissed with leave to amend.

20         **A.   Harassment and Intentional Infliction of Emotional Distress Claims**

21               **Against the Individual Defendants Are Dismissed Without Leave to**

22               **Amend**

23         The test for fraudulent joinder is comparable to a Rule 12(b)(6) analysis, in that a

24   claim is not dismissed "unless it appears beyond doubt that the plaintiff can prove no

25   set of facts in support of the claim that would entitle the plaintiff to relief." *McNamara-*

26   *Blad v. Ass'n of Pro. Flight Attendants*, 275 F.3d 1165, 1169 (9th Cir. 2002); *see also*

27   *Bellicci v. GTE Sprint Communs. Corp.*, No. C-02-03974-WHA, 2003 WL 151538, at *3

28

(N.D. Cal. Jan. 14, 2003).  "Analytically, a fraudulent joinder finding compels dismissal of [] 'sham defendants.'"  *Isaacs v. Broido*, 358 Fed. App'x 874, 876 (9th Cir. 2009).

Having found that individual Defendants Lozada, Fears, Dennington, and Ibarra were fraudulently joined, *see* Section II.A *supra*, the Court now dismisses all claims asserted against these Defendants with prejudice.

**B.     Sex/Gender Harassment, Failure to Engage in Interactive Process, and Failure to Accommodate Claims Against Costco May Proceed**

The Court finds that three of the twenty-one causes of action in Plaintiff's Complaint have been plausibly pled against Costco: (1) harassment based on sex/gender, (2) failure to engage in the interactive process, and (3) failure to accommodate Plaintiff's disability.

**1.     Sex/Gender Harassment Claim**

Plaintiff seeks to hold Costco liable for sex/gender harassment in violation of the FEHA because Costco failed to "timely, properly, and/or completely investigate the [harassing] conduct Plaintiff was routinely subjected to," resulting in a hostile or abusive work environment.  (*See* Compl. ¶¶ 1–27.)

There are two forms of liability that may be imposed on an employer for sexual harassment under the FEHA: (1) negligence for acts perpetrated by a nonsupervisory co-employee, or (2) strict liability for acts perpetrated by a supervisor.  *See State Dept. of Health Servs. v. Superior Ct.*, 31 Cal. 4th 1026, 1040–42 (2003).  An employer is liable for sexual harassment by a nonsupervisory co-employee "only if the employer (a) knew or should have known of the harassing conduct and (b) failed to take immediate and appropriate corrective action."  *Id.* at 1041; *see also* Cal. Gov. Code § 12940(j)(1).  To avoid liability for sexual harassment by a nonsupervisory co-employee under the FEHA, an employer must take "prompt, reasonable and efficacious remedial action" in response to an employee's harassment complaint.  *Mathieu v. Norrell Corp.*, 115 Cal. App. 4th 1174, 1185 (2004).  The employer's obligation to take prompt corrective action requires both temporary steps calculated

14

1   to end the harassment and permanent remedial steps to prevent future harassment

2   once an investigation is completed.  *Bradley v. Dep't of Corrs. & Rehab.*, 158 Cal. App.

3   4th 1612, 1630 (2008).  Consequently, "when harassment is by a nonsupervisory

4   employee, an employer's liability is predicated not on the conduct itself, but on the

5   employer's response once it learns of the conduct."  *Id.* at 1631.

6        Here, Plaintiff has plausibly pled she was being sexually harassed by Guzman

7   on a severe or pervasive basis from May 2021 through March 2022 because he

8   "continually" asked her out and responded with verbal abuse and threatened injury

9   when she attempted to confront him about his harassment.[5]  (Compl. ¶¶ 10(a)-(f);) *see*

10  *Hughes*, 46 Cal. 4th at 1043 (a single harassing incident involving physical violence, or

11  the threat thereof may be sufficient to establish liability by an employer for sexual

12  harassment).  *Contra. Mokler*, 157 Cal. App. 4th at 144–45 (concluding that three

13  incidents that took place over a five-week period, none of which involved a physical

14  threat, fell short of establishing continuous, pervasive harassment).  Plaintiff alleges

15  she informed multiple supervisors of the harassment, (Compl. ¶¶ 10(g)–(o), 10(r)–(t),)

16  establishing Costco knew or should have known of the harassment, and that her

17  supervisors either told her to stay away from Guzman, laughed her off and

18  downplayed the harassment, conducted insufficient investigations, and/or attempted

19  to coerce her into signing a non-disclosure agreement (*id.*), raising a question as to

20  the promptness and efficaciousness of Costco's response.  Plaintiff's managers also

21  changed her schedule to keep Plaintiff away from Guzman which courts have found to

22  be an insufficient response.  *See Nichols v. Azteca Rest. Enterprises, Inc.*, 256 F.3d

23  864, 876 (9th Cir. 2001) ("[H]arassment is to be remedied through actions targeted at

24

25  [5] Plaintiff's allegations regarding Garcia, however, are decidedly weaker as Plaintiff alleges only one
    incident when Garcia told Plaintiff "You look good today" and followed her into the women's restroom,

26  grabbed her arm, and ran into the men's restroom.  While these actions are troublesome and
    undoubtedly unwelcome, these actions are likely insufficient to sustain allegations of sexual harassment

27  as they do not meet the severe and pervasive requirement.  *See, e.g., Brooks v. City of San Mateo*, 229
    F.3d 917, 926 (9th Cir. 2000) (rejecting a hostile work environment claim where plaintiff alleged that she

28  was harassed on a single occasion for a matter of minutes in a way that did not impair her ability to
    perform her job in the long-term).

the harasser, not at the victim." (quoting *Intlekofer v. Turnage*, 973 F.2d 773, 780 (9th Cir. 1992))).

Thus, Plaintiff's First Cause of Action for Sex/Gender Harassment against Costco may proceed.

## 2.    Interactive Process Claim

Plaintiff also brings a claim for failure to engage in the interactive process, alleging Costco failed to engage with Plaintiff to determine reasonable accommodations for her blood disorder, hereditary angioedema.  Specifically, Plaintiff alleges she was assigned to work in the refrigerator, and that when she complained that she would be unable to work in the refrigerator because it exacerbated her condition, management responded by asking her for a doctor's note and informing her that she would not be accommodated beyond the intermittent leave she was already receiving.  (Compl. ¶ 273.)

The FEHA makes it unlawful for an employer "to fail to engage in a timely, good faith, interactive process with the employee or applicant to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee [] with a known physical or mental disability or known medical condition."  Cal. Gov. Code § 12940(n).  In general, "it is the responsibility of the individual with a disability to inform the employer that an accommodation is needed."  *Spitzer v. The Good Guys, Inc.*, 80 Cal. App. 4th 1376, 1384 (2000).  Thus, to state a *prima facie* case for failure to engage in the interactive process, a plaintiff must demonstrate that she "tender[ed] a specific request for a necessary accommodation."  *King v. United Parcel Serv., Inc.*, 152 Cal. App. 4th 426, 443 (2007) (quoting *Spitzer*, 80 Cal. App. 4th at 1384).  "Liability for failure to engage in the interactive process 'hinges on the objective circumstances surrounding the parties' breakdown in communication, and responsibility for the breakdown lies with the party who fails to participate in good faith."  *Gelfo v. Lockheed Martin Co.*, 140 Cal. App. 4th 34, 62 n. 22 (2006).

Here, the facts sufficiently allege that Costco was aware of Plaintiff's disability because Costco had already approved Plaintiff's intermittent leave for her disability. Plaintiff further alleges that she "complained to [Fears] that working in the refrigerator can cause a serious flare-up of her dangerous disability." (Compl. ¶ 273(d).)  From this, the Court can reasonably infer that Plaintiff was requesting an accommodation to work only outside the refrigerator.  The Court can also reasonably infer that the interactive process may have broken down when Fears informed Plaintiff she would not be accommodated beyond the intermittent leave she was already receiving. (*Id.* ¶ 273(g).)  While greater detail surrounding Plaintiff's conversations with management will be required if Plaintiff is ultimately to prevail on this claim, Plaintiff's allegations are minimally sufficient at this stage.

Thus, Plaintiff's Fourteenth Cause of Action for Failure to Engage in the Mandatory Good Faith Interactive Process may proceed.

### 3.     Failure to Accommodate Claim

Plaintiff alleges a failure to accommodate her disability, hereditary angioedema, on the same factual basis as her failure to engage in the interactive process claim. (*See* Compl. ¶ 295.)

The FEHA prohibits an employer from failing "to make reasonable accommodation for the known physical or mental disability of an . . . employee." Cal. Gov. Code § 12940(m).  To prevail on a failure to accommodate claim, a plaintiff must allege: (1) she has a disability covered by the FEHA; (2) she is qualified to perform the essential functions of her position; and (3) her employer failed to reasonably accommodate her disability. *Furtado v. State Personnel Bd.*, 212 Cal. App. 4th 729, 744 (2013); *see also Scotch v. Art Inst. of Cal.*, 173 Cal. App. 4th 986 (2009).  "Two principles underlie a cause of action for failure to provide a reasonable accommodation.  First, the employee must request an accommodation.  Second, the parties must engage in an interactive process regarding the requested accommodation and, if the process fails, responsibility for the failure rests with the

party who failed to participate in good faith." *Moore v. Regents of Univ. of Cal.*, 248 Cal. App. 4th 216, 242 (2016) (citations omitted).

"Reasonable accommodation" means "a modification or adjustment to the workplace that enables the employee to perform the essential functions of the job held or desired." *Lui v. City & Cnty. of S.F.*, 211 Cal. App. 4th 962, 971 (2012). Where a reassignment would accommodate the employee, the obligation to reassign an employee "does not require creating a new job, moving another employee, promoting the disabled employee, or violating another employee's rights under a collective bargaining agreement." *Furtado*, 212 Cal. App. 4th at 745. Rather, an employer will be liable under § 12940(m) "only if the work environment could have been modified or adjusted in a manner that would have enabled the employee to perform the essential functions of the job," *Nadaf-Rahrov v. Neiman Marcus Grp., Inc.*, 166 Cal. App. 4th 952, 975 (2008), and the accommodation does not impose an undue hardship on the employer, *Bagatti v. Dep't of Rehab.*, 97 Cal. App. 4th 344, 355 (2002).

Here, Plaintiff alleges she was assigned to work in a refrigerator despite Costco knowing that doing so could possibly exacerbate her disability and was refused accommodation outside the refrigerator when she voiced concerns over her assignment. Defendant points out that Plaintiff received intermittent leave for her disability, raising a question as to whether she was in fact granted a reasonable accommodation. (Compl. ¶ 295(f).) Nonetheless, it is not clear on the face of the Complaint whether intermittent leave alone would allow Plaintiff to perform the essential functions of her job. Thus, as with her failure to engage in the interactive process claim, Plaintiff's allegations are minimally sufficient to establish she requested an accommodation outside the refrigerator and was denied this accommodation after her interactive process with Costco management allegedly failed.

Thus, Plaintiff's Fifteenth Cause of Action for Failure to Accommodate may proceed.

**C.    All Other Claims Against Costco Are Dismissed With Leave to Amend**

**1.    Remaining Harassment Claims**

In addition to sex/gender harassment, Plaintiff also seeks to hold Costco liable for religious harassment, marital status harassment, and actual/perceived disability harassment.

Defendants are correct, however, that Plaintiff fails to meet the severe or pervasive requirement for these remaining harassment claims.  (Mot. Dismiss at 6–7.) As explained *supra*, harassment cannot be "occasional, isolated, sporadic, or trivial," but rather must be "of a repeated, routine, or generalized nature," *Mokler*, 157 Cal. App. 4th at 142, and a "few isolated incidents" can only support a FEHA harassment claim if they are "severe in the extreme," *Hughes*, 46 Cal. 4th at 1043–44.  The actions alleged here are isolated incidents and are far from severe.  For example, Plaintiff complains of supervisors "smirking" at her concerning religious accommodations, (Compl. ¶¶ 66(f)–(g),) or screaming at her about her marital status, (*id*. ¶¶ 125(e)–(g).) However, "annoying or 'merely offensive' comments in the workplace are not actionable."  *Lyle v. Warner Bros. Television Prods.*, 38 Cal. 4th 264, 283 (2006).  In addition, many of the acts Plaintiff complains of, such as having her schedule switched, or requests for doctor's notes, are routine personnel management actions, not harassment.  *See Janken*, 46 Cal. App. 4th at 64–65 ("[C]ommonly necessary personnel management actions . . . do not come within the meaning of harassment.").  Nor can Plaintiff establish that these actions were taken because of her protected statuses.

Thus, Plaintiff's Fourth Cause of Action for Religious Harassment in Employment, Seventh Cause of Action for Marital Status Harassment in Employment, and Tenth Cause of Action for Actual/Perceived Disability Harassment against Costco are dismissed with leave to amend.

////

////

## 2.    Discrimination Claims

Plaintiff asserts claims for sex/gender, religious, marital status, and actual/perceived disability discrimination on the same factual basis alleged in her harassment claims.

To establish a *prima facie* case of discrimination, Plaintiff must demonstrate: (1) she was a member of a protected class, (2) she was performing competently in her position, (3) she suffered an adverse employment action, and (4) there is some other circumstance suggesting a discriminatory motive—generally, that similarly-situated employees outside her protected class were treated better. *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 355 (2000).

"[I]n the employment context, the adverse employment action threshold is met when the employer's action impacts the terms, conditions, or privileges of the plaintiff's job in a real and demonstrable way." *Wilson v. Murillo*, 163 Cal. App. 4th 1124, 1134–35 (2008) (internal quotation marks omitted) (quoting *Davis v. Town of Lake Park*, 245 F.3d 1232, 1239 (11th Cir. 2001)).  The Ninth Circuit broadly construes adverse employment actions, holding that "a wide array of disadvantageous changes in the workplace" can constitute adverse employment actions. *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000).  Termination, negative employment references, undeserved negative performance reviews, and denial of promotions qualify as adverse employment actions. *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000).

However, not every change in the conditions of employment constitutes an adverse employment action. *Malais v. L.A. City Fire Dep't*, 150 Cal. App. 4th 350, 358 (2007).  "[T]he mere fact that an employee is displeased by an employer's act or omission does not elevate that act or omission to the level of a materially adverse employment action." *Thomas v. Dep't of Corr.*, 77 Cal. App. 4th 507, 511 (2000); *see also Kortan v. State of Cal.*, 5 F. Supp. 2d 843, 853 (C.D. Cal 1998) (holding that neither verbal disparagement, low performance ratings, denial of a request for a

1    change of supervisor, nor denial of a transfer amount to an adverse employment

2    action).  Thus, it is clear from case law that an employment action meets the threshold

3    "only if it had a *substantial* and *material* adverse effect on the terms and conditions of

4    the plaintiff's employment." *Pinero v. Specialty Rests. Corp.*, 130 Cal. App. 4th 635,

5    640–41 (2005) (emphasis added).

6          Regarding Plaintiff's sex/gender discrimination claim, Plaintiff alleges only that

7    she received a handful of write-ups following her complaints of sexual harassment,

8    (Compl. ¶ 32,) but fails to demonstrate how these write-ups constitute adverse

9    employment actions as she does not allege any direct consequences of these write-

10    ups such as loss of compensation or a demotion.  *See Sheets v. City of Winslow*, No.

11    CV-19-08187-PCT-JJT, 2020 WL 4514947, at *6 (D. Az. Mar. 6, 2020) ("This Court and

12    other districts in this circuit have held that being written up, without more, is not an

13    adverse employment action." (collecting cases)); *Quinn v. Salvation Army*, No. CV-99-

14    3794-FMC-SHx, 2000 WL 888065, at *4 (C.D. Cal. Jan. 20, 2000) (holding write-ups

15    were not adverse employment actions because plaintiff did not allege a "concomitant

16    adverse impact, such as a demotion or a change in responsibilities," and that the

17    possibility that such write-ups might have a future adverse effect was insufficient).

18          Regarding her religious discrimination claim, Plaintiff's alleged schedule

19    change, (Compl. ¶ 88,) raises a slightly more borderline issue as the Ninth Circuit has

20    held that shift changes may constitute adverse employment actions, *see Ray v.*

21    *Henderson*, 217 F.3d 1234, 1242–43 (9th Cir. 2000), and courts in this circuit have

22    found that a shift change which interferes with religious accommodation can be an

23    adverse employment action, *Dorsey v. Roche*, No. C-00-21070-JW, 2002 U.S. Dist.

24    LEXIS 29453, at *20 (N.D. Cal. Oct. 1, 2002) (finding plaintiff had sufficiently pled an

25    adverse employment action when he alleged he filed an Equal Employment

26    Opportunity complaint and shortly thereafter his work schedule was changed so that

27    he was assigned to work on the Sabbath).  However, Plaintiff has failed to allege any

28    discriminatory motive.  The Complaint clearly establishes that Plaintiff's schedule was

1   changed by her supervisors in order to distance her from her alleged harasser

2   Guzman, and due to her lower seniority.  (Compl. ¶ 88.)  Thus, Plaintiff fails to

3   demonstrate that her schedule was changed because of her religion, or that other

4   similarly situated employees with different religions were treated any differently.[6]

5          As to her marital status discrimination claim, Plaintiff has failed to allege that she

6   was ultimately denied bereavement leave after she was initially told she did not qualify

7   for leave, (Compl. ¶ 148); rather, Plaintiff states only that was asked to submit

8   paperwork documenting her marital status.  A request to submit paperwork is not a

9   substantial and material adverse effect on terms and conditions of employment.

10         Finally, Plaintiff alleges she was asked to work in the refrigerator despite her

11  blood disorder, which could exacerbate her condition, but fails to allege if working in

12  the refrigerator actually did exacerbate her condition.  (*See* Compl. ¶ 211.)  At most,

13  Plaintiff alleges a failure to accommodate her disability, but this by itself cannot be an

14  adverse employment action.  *See Bradley v. Cty. of Sacramento Dep't of Human*

15  *Assistance*, No. 2:19-CV-02419-TLN-CKD-PS, 2020 WL 2319866, at *5 (E.D. Cal. May

16  11, 2020) ("An employer's failure to accommodate an employee's disability can

17  constitute an adverse action *provided that* the failure adversely affects the employee's

18  terms, conditions, and privileges of employment." (emphasis added)).

19         Thus, Plaintiff's Second Cause of Action for Sex/Gender Discrimination, her Fifth

20  Cause of Action for Religious Discrimination, her Eighth Cause of Action for Marital

21  Status Discrimination, and her Eleventh Cause of Action for Actual/Perceived Disability

22  Discrimination are dismissed with leave to amend.

23                    **3.    Retaliation Claims**

24         Plaintiff asserts claims for sex/gender, religious, marital status, and

25  actual/perceived disability retaliation on the same factual basis alleged in her

26  harassment and discrimination claims.

27

28  [6] The Court notes that Plaintiff's religious discrimination and retaliation claims may be better styled as a failure to accommodate claim.

1    To establish a *prima facie* case of retaliation under the FEHA, a plaintiff must

2    show: (1) she engaged in a protected activity;[7] (2) she was thereafter subjected to

3    adverse employment action by her employer, and (3) there was a causal link between

4    the two.  *Addy v. Bliss & Glennon*, 44 Cal. App. 4th 205, 217 (1996).

5    As established above, *see* Section IV.C.2 *supra*, Plaintiff has failed to allege any

6    adverse employment actions with respect to her sex/gender, marital status, and

7    actual/perceived disability retaliation claims.

8    Further, Plaintiff has failed to demonstrate a causal link between her complaints

9    of religious harassment/discrimination and her schedule change.  Her Complaint

10   states her schedule was changed because her supervisors, Lozada and Fears, were

11   trying to keep her apart from Guzman, as well as due to her lower seniority.  (Compl.

12   ¶¶ 106–107.)  Indeed, it appears that Plaintiff's schedule change occurred before her

13   complaints of religious harassment were made, further undermining any retaliatory

14   animus.[8]

15   Thus, Plaintiff's Third Cause of Action for Sex/Gender Retaliation, her Sixth

16   Cause of Action for Religious Retaliation, her Ninth Cause of Action for Martial Status

17   Retaliation, her Twelfth Cause of Action for Actual/Perceived Disability Retaliation, and

18   her Twenty-First Cause of Action for Retaliation in Violation of Public Policy are

19   dismissed with leave to amend.

20   ### 4.    California Family Rights Act Claim

21   Plaintiff asserts a violation of California Government Code Section 12945.2,

22   which provides that it is unlawful to refuse to grant a request by an employee for

23   family care and medical leave or discriminate against an employee on behalf of that

24   employee's exercise of family care or medical leave.

25

26   [7] An employee engages in protected activity when they have "opposed any practices forbidden under [the FEHA] or because the person has filed a complaint, testified, or assisted in any proceeding under [the FEHA]."  Cal. Gov. Code § 12940(h).

27   [8] Plaintiff states her schedule was changed to a less-desirable schedule following her complaints about sexual harassment.  Plaintiff's Complaint as currently styled does not allege that her schedule was

28   changed in retaliation for her sex/gender complaints.

1    Plaintiff's allegations, however, do not suggest that she was in any way refused

2    family care or medical leave, or discriminated against for having taken leave in the

3    past.  Plaintiff admits that she has been and continues to be granted intermittent leave

4    for her disability, (Compl. ¶¶ 254(b), (g),) and makes no showing that she was denied

5    leave or discriminated against because she took intermittent leave.

6    As such, Plaintiff's Thirteenth Cause of Action for Violation of the California

7    Family Rights Act is dismissed with leave to amend.

8    **5.    Unsafe Workplace and Whistleblower Claims**

9    Plaintiff asserts an unsafe workplace claim under California Labor Code Section

10   6310 and a whistleblower claim under California Labor Code Section 1102.5 on the

11   same factual basis as her retaliation claims.

12   Section 6310 protects employees who make complaints about workplace safety

13   from being "discharged, threatened with discharge, demoted, suspended, or in any

14   other manner discriminated against in the terms and conditions of employment

15   because the employee has made a bona fide written or oral complaint . . . ."  Cal.

16   Labor Code § 6310(b).  A bona fide complaint is one which can "reasonably be

17   interpreted to address safety concerns."  *Schulthies v. Nat'l Passenger R.R. Corp.*, 650

18   F. Supp. 2d 994, 1002 (N.D. Cal. 2009).  To establish a prima facie case of retaliation

19   under Section 6310, a plaintiff must show that (1) she engaged in a protected activity,

20   (2) she was thereafter subjected to adverse employment action by her employer, and

21   (3) there was a causal link between the two.  *Muller v. Auto. Club of S. Cal.*, 61 Cal.

22   App. 4th 431, 451 (1998), disapproved of on other grounds by *Colmenares v.*

23   *Braemar Country Club, Inc.*, 29 Cal. 4th 1019, 1031, n.6 (2003).  Here, Plaintiff does

24   not sufficiently allege that she complained about Costco's failure to maintain safe

25   working conditions; rather she complained about a threat made by an employee in

26   the context of sexual harassment.  Section 6310 is not applicable to this set of facts.

27   *See id.* at 452 (voicing fear about safety because of a patron's threats is not a

28   complaint about unsafe working conditions within the meaning of the labor code).

24

1    Section 1102.5(b) prohibits an employer from retaliating against an employee

2    for disclosing information to a person with authority over the employee if the

3    employee has reasonable cause to believe that the information discloses a violation of

4    law.  "The elements of a [Labor Code] section 1102.5(b) retaliation cause of action

5    require that (1) the plaintiff establish a prima facie case of retaliation, (2) the defendant

6    provides a legitimate, nonretaliatory explanation for its acts, and (3) the plaintiff shows

7    this explanation is merely a pretext for the retaliation." *Patten v. Grant Joint Union*

8    *High Sch. Dist.*,134 Cal. App. 4th 1378, 1384 (2005).  For the same reasons that

9    Plaintiff's retaliation claims have failed, *see* Section IV.C.3 *supra*, her whistleblower

10   retaliation claim also fails.

11       Plaintiff's Sixteenth Cause of Action for Unsafe Workplace and Seventeenth

12   Cause of Action for Whistleblower Violations will be dismissed with leave to amend.

13                    **6.    Assault and Battery Claims**

14       Plaintiff seeks to hold Costco liable for alleged assault by Guzman and battery

15   by Garcia.

16       A plaintiff seeking to hold an employer vicariously liable for an employee's

17   tortious conduct must show that the tortious conduct "was committed within the

18   course and scope of employment." *Juarez v. Boy Scouts of Am., Inc.*, 81 Cal. App. 4th

19   377, 394 (2000).  An employer will not be held vicariously liable for an employee's

20   malicious or tortious conduct if the employee substantially deviates from their

21   employment duties for personal purposes. *Farmers Ins. Grp. v. Cnty. of Santa Clara*,

22   11 Cal. 4th 992, 1004–05 (1995).  "If an employee's tort is personal in nature, mere

23   presence at the place of employment and attendance to occupational duties prior or

24   subsequent to the offense will not give rise to a cause of action against the employer

25   under the doctrine of respondeat superior." *Id.* at 1005.  The general rule is that

26   where an employee commits acts of sexual misconduct during the course of his work,

27   such acts are outside the scope of his employment, and no vicarious liability attaches.

28   *See, e.g., Maria D. v. Westec Residential Sec., Inc.*, 85 Cal. App. 4th 125, 146–47 (2000)

1   (finding no vicarious liability because security guard's sexual assault of plaintiff was not

2   fairly attributable to any peculiar aspect of defendant's business operations); *Farmers*

3   *Ins. Grp.*, 11 Cal. 4th at 1019 (finding deputy sheriff's sexual harassment of female

4   deputies was outside the scope of his employment).

5         Here, Plaintiff has failed to allege any causal nexus between Guzman's

6   employment and his alleged unwanted sexual advances or behavior, (Compl. ¶ 355,)

7   or Garcia's employment and his alleged grabbing of Plaintiff's arm, (*id.* ¶ 371).

8   Guzman and Garcia's actions clearly fall outside the scope of their employment duties,

9   and there was no business purpose or benefit to their actions.

10         Thus, Costco cannot be held liable, and Plaintiff's Eighteenth (18) and

11   Nineteenth Causes of Action for Assault and Battery are dismissed with leave to

12   amend.

13         **7.**    **Intentional Infliction of Emotional Distress Claim**

14         Plaintiff alleges Defendants' actions caused her to suffer severe emotional

15   distress.

16         An essential element of an intentional infliction of emotional distress claim is

17   that the defendants engaged in "conduct . . . so outrageous in character, and so

18   extreme in degree, as to go beyond all possible bounds of decency, and to be

19   regarded as atrocious, and utterly intolerable in a civilized community." *Cantu*, 4 Cal.

20   App. 4th at 888.  A defendant is not liable for conduct that is insulting, annoying,

21   distressing, irritating or even threatening.  *Yurick*, 209 Cal. App. 3d at 1129–30.

22   Rather, the conduct at issue must be "egregiously outside the realm of civilized

23   conduct."  *Id.* at 1129.

24         The facts Plaintiff alleges against Defendants are insufficient to satisfy this

25   standard as none of the acts are plainly outrageous or egregious.  Indeed, as

26   demonstrated above, Plaintiff has largely failed to allege harassment, discrimination,

27   or retaliation of any type.

28

Thus, Plaintiff's Twentieth Cause of Action for Intentional Infliction of Emotional Distress is dismissed with leave to amend.

## CONCLUSION

In accordance with the above, IT IS HEREBY ORDERED Plaintiff's Motion to Remand (ECF No. 13) is DENIED.  Further, Defendants' Motion to Dismiss (ECF No. 14-1) all claims against the individual Defendants Lozada, Fears, Dennington, and Ibarra with prejudice is GRANTED.  Finally, Defendants' Motion to Dismiss (ECF No. 14-1) all claims against Defendant Costco is GRANTED in part, with leave to amend.

IT IS SO ORDERED.

Dated:   **August 8, 2023**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE